[Cite as *State v. Holdcroft*, 2012-Ohio-3066.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  16-10-13

      v.

HENRY ALLEN HOLDCROFT,          O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Wyandot County Common Pleas Court
Trial Court No. 98 CR 0044

**Judgment Affirmed**

**Date of Decision:   July 2, 2012**


APPEARANCES:

    *Kristopher A. Haines*  for Appellant

    *Jonathan K. Miller*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Henry Allen Holdcroft (hereinafter "Holdcroft"), appeals the November 16, 2010 judgment of the Wyandot County Court of Common Pleas resentencing him to include post-release control ("PRC") for a mandatory period of five years for aggravated arson and a discretionary period of up to three years for arson to be run concurrently to one another.

{¶2} On November 13, 1998, the Wyandot County Grand Jury indicted Holdcroft on three counts: Count One, aggravated arson in violation of R.C. 2909.02(A)(3), a first degree felony; Count Two, complicity to commit aggravated arson in violation of R.C. 2923.03(A)(1), a first degree felony; and Count Three, arson in violation of R.C. 2909.03(A)(4), a third degree felony. (Doc. No. 1). The charges stemmed from an incident where Holdcroft hired a third party to set fire to his then-wife's automobile and home.

{¶3} On June 9, 1999, the State filed a motion to dismiss Count Two of the indictment on the basis that the charge was an allied offense of similar import to Count One, aggravated arson. (Doc. No. 58). The trial court granted the State's motion to dismiss Count Two on June 25, 1999. (Doc. No. 79). On July 6-9, 1999, a jury trial was held on the remaining two counts of the indictment against Holdcroft. The jury returned guilty verdicts on both counts. (Doc. Nos. 106-07).

On July 29, 1999, the trial court filed a judgment entry of conviction. (Doc. No. 114).

{¶4} On September 10, 1999, the trial court sentenced Holdcroft to ten years imprisonment on Count One, aggravated arson, and five years imprisonment on Count Three, arson. The trial court ordered "that the sentence imposed for Count Three shall be served consecutively to the sentence imposed in Count One." (Sept. 13, 1999 JE, Doc. No. 116). Holdcroft was ordered to make restitution to the victim, Kathy Hurst, or the insurance carrier, in the sum of $5,775.00, and $400.00 to Eric Goodman. The trial court also notified Holdcroft "that a period of post-release control shall be imposed," and that if he violated his post-release control further restrictions upon his liberty could follow as a consequence. (*Id.*) Holdcroft was also taxed with the costs of prosecution and all other fees permitted under R.C. 2929.18(A)(4). This entry was journalized on September 13, 1999. (*Id.*)

{¶5} On September 14, 1999, Holdcroft, pro se, filed a notice of appeal. (Doc. No. 117). The trial court appointed appellate counsel, and the appeal was assigned case no. 16-99-04. (Doc. No. 124). On appeal, Holdcroft asserted one assignment of error, arguing that his convictions were against the manifest weight of the evidence. *State v. Holdcroft* (Mar. 31, 2000), 3d Dist. No. 16-99-04. The State also appealed the judgment of the trial court regarding "other acts" evidence

that was excluded from trial. This Court subsequently overruled Holdcroft's assignment of error, sustained the State's assignment of error, and upheld the convictions. *Id.*

{¶6} While his direct appeal was pending before this Court, Holdcroft filed a motion for the appointment of counsel in order to pursue post-conviction relief. (Doc. No. 131). The trial court granted the motion and appointed counsel on February 3, 2000. (Doc. No. 132).

{¶7} On May 5, 2000, Holdcroft, pro se, filed a notice of appeal to the Ohio Supreme Court from this Court's March 31, 2000 decision. (Doc. No. 134). The Ohio Supreme Court, however, declined review. *State v. Holdcroft*, 89 Ohio St.3d 1464 (2000).

{¶8} On June 9, 2000, Holdcroft, through appointed appellate counsel, filed a motion for a new trial, along with a motion to withdraw as appellate counsel. (Doc. No. 135-136). The trial court granted the motion to withdraw but denied the motion for a new trial. (Doc. Nos. 138, 141). On June 26, 2000, Holdcroft filed a motion for judicial release, which the trial court also denied. (Doc. Nos. 137, 139).

{¶9} On July 13, 2006, Holdcroft filed a "motion to vacate or set aside and modify sentence pursuant to R.C. 2945.25(A) & Crim.R. 52(B)." (Doc. No. 161.) On July 20, 2006, the trial court overruled this motion, finding it was untimely and lacked substantive merit "as the Defendant was not convicted of allied offenses of

similar import. There were separate and distinct felonies committed by the Defendant, one involving a dwelling and the other involving an automobile." (Doc. No. 163.)

{¶10} On August 16, 2006, Holdcroft, pro se, filed a notice of appeal from the trial court's denial of his motion. (Doc. No. 165). On appeal, Holdcroft argued that his sentence was void because he was sentenced on two offenses that were allied offenses of similar import. This Court overruled Holdcroft's assignment of error, finding that his motion was an untimely post-conviction motion, and, under a plain error analysis, that the offenses were not allied offenses of similar import. *State v. Holdcroft*, 3d Dist. No. 16-06-07, 2007-Ohio-586.

{¶11} On December 11, 2009, the State filed a motion to correct Holdcroft's sentence pursuant to R.C. 2929.191. (Doc. No. 186). On December 30, 2009, the State filed a motion for a de novo sentencing hearing to correct Holdcroft's sentence pursuant to *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434. (Doc. No. 195). The trial court granted this motion and conducted a de novo sentencing on January 26, 2010. (Doc. No. 198). Once again, the trial court sentenced Holdcroft to ten years on Count One and five years on Count Three. The trial court further ordered that Count Three be served consecutively to Count One for an aggregate term of fifteen years. The trial court notified Holdcroft that he would be subject to five years of mandatory post-release control

as to Count One and three years of discretionary post-release control as to Count Three. The trial court also noted that the terms of post-release control would not be served consecutively to each other. The trial court further ordered that Holdcroft "pay restitution to Kathy Hurst, or the insurance carrier, in the sum of $5,775.00; and make restitution to Eric Goodman in the amount of $400.00." (Feb. 2, 2010 JE, Doc. No. 205)

{¶12} On February 12, 2010, Holdcroft filed a notice of appeal from the trial court's judgment entry of sentence. (Doc. No. 210). On May 26, 2010, while the appeal was pending, Holdcroft, pro se, filed a petition for post-conviction relief and various motions relating to that petition. (Doc. Nos. 223-26). The trial court noted that Holdcroft was appointed counsel to handle the direct appeal of his conviction, which was pending before this Court. (Doc. No. 227). The trial court subsequently dismissed Holdcroft's petition, concluding that it lacked jurisdiction to rule because his appeal was pending before this Court. (*Id.*).

{¶13} However, on September 13, 2010, this Court dismissed Holdcroft's direct appeal from the trial court's de novo resentencing in January of 2010. *State v. Holdcroft*, 3d Dist. No. 16-10-01, 2010-Ohio-4290. As the basis for dismissing the case, we determined that the judgment entry imposing Holdcroft's sentence and conviction did not constitute a final appealable order. *Id.* at ¶ 19. More specifically, we found that the trial court's de novo sentencing entry failed to

allocate the amount of restitution between the victim, Kathy Hurst, and the insurance company and that an order of restitution must set forth the amount or method of payment as to each victim receiving restitution in order to be a final appealable order. *Id.*, citing *State v. Kuhn*, 3d Dist. No. 4-05-23, 2006-Ohio-1145, ¶ 8; *State v. Hartley*, 3d Dist. No. 14-09-42, 2010-Ohio-2018, ¶ 5. Because Section 3(B)(2), Article IV of the Ohio Constitution limits our jurisdiction to reviewing "final appealable orders," we remanded Holdcroft's appeal of his de novo sentence to the trial court to resolve the restitution issue.[1]

{¶14} Subsequently, on November 16, 2010, the trial court issued a new judgment entry pursuant to our decision. (Doc. No. 238). In this entry, the trial court ordered Holdcroft to pay $5,775.00 to Kathy Hurst and also noted that certain portions of the record supported this sum and that "Ms. Hurst will be obligated to reimburse her insurance carrier for any money paid to her by it over and above that which she spent for repairing the vehicle." (*Id.*) The trial court further noted that "[t]he defense interposed no objection to the restitution figures offered." (*Id.*)

---

[1] As a result of this dismissal, on December 20, 2010, we found that the trial court incorrectly concluded that it lacked jurisdiction to rule on Holdcroft's petition for post-conviction relief. Nevertheless, we found that the trial court correctly dismissed the petition and the motions related to it because a final order of conviction and sentence had not been filed in the case. *State v. Holdcroft*, 3d Dist. No. 16-10-04, 2010-Ohio-6262, ¶ 21.

{¶15} On November 29, 2010, Holdcroft filed a notice of appeal. (Doc. No. 240). Holdcroft asserts nine assignments of error for our review. We elect to address Holdcroft's first assignment of error last and to combine his other eight assignments of error for discussion.

**SECOND ASSIGNMENT OF ERROR**

**THE CONSECUTIVE, MAXIMUM SENTENCES VIOLATED THE 6TH AMENDMENT TO THE U.S. CONSTITUTION, AND THE DUE PROCESS CLAUSES CONTAINED IN THE OHIO AND U.S. CONSTITUTIONS.**

**THIRD ASSIGNMENT OF ERROR**

**THE MAXIMUM, CONSECUTIVE SENTENCES AND THE RESTITUTION ORDER WERE CONTRARY TO LAW ANDABUSIVE.**

**FOURTH ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING THE APPELLANT ON AGGRAVATED ARSON AND ARSON COUNTS IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE 5TH AMENDMENT OF THE U.S. CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND OHIO'S MULTIPLE-COUNT STATUTE.**

**FIFTH ASSIGNMENT OF ERROR**

**THE SENTENCE SHOULD BE REVERSED AS IT VIOLATES CRIMINAL RULE 32, AND THE 5TH, 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION, BECAUSE IT WAS IMPOSED OVER TEN YEARS AFTER THE GUILTY VERDICT.**

## SIXTH ASSIGNMENT OF ERROR

**THE COURT ERRED WHEN IT FAILED TO CHANGE THE VENUE OR GRANT A MISTRIAL DUE TO JURY TAINT AND JURY MISCONDUCT THAT VIOLATED THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.**

## SEVENTH ASSIGNMENT OF ERROR

**THE COURT ERRED IN ADMITTING OTHER ACTS EVIDENCE IN VIOLATION OF EVID.R. 403 AND 404, THUS DEPRIVING APPELLANT OF A FAIR TRIAL UNDER THE 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.**

## EIGHTH ASSIGNMENT OF ERROR

**APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, AND ARTICLE I, SECTIONS 1 & 16 OF THE OHIO CONSTITUTION, AND THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

## NINTH ASSIGNMENT OF ERROR

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 10, 16 OF THE OHIO CONSTITUTION.**

{¶16} Initially, we must determine the scope of our review of these assignments of error and whether they are properly before this Court. The State

asserts that the only issues Holdcroft may now raise on appeal are those related to PRC pursuant to *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238. Thus, the State contends that Holdcroft is precluded from challenging the merits of his conviction, including the determination of guilt and the lawful elements of his sentence. In response, Holdcroft argues that unlike the facts at issue in *Fischer*, which addressed sentences that were void for lacking proper PRC notification, his case involves a sentencing entry that did not constitute a final, appealable order because of the trial court's restitution order. As such, he maintains that our prior decisions are nullities because we did not have jurisdiction until a final appealable order was rendered, i.e. on November 16, 2010, and that each of his assignments of error is properly before this Court as if this were his first direct appeal.

{¶17} After reviewing the convoluted procedural history of this case, we conclude that addressing Holdcroft's assignments of error furthers the interests of justice here. That being said, this Court is very familiar with this case and our analysis of Holdcroft's assignments of error will be done summarily.

{¶18} In his eighth assignment of error, Holdcroft argues that his conviction was not supported by sufficient evidence and against the manifest weight of the evidence. We disagree. After reviewing the record herein under the applicable standards, we conclude that the State presented sufficient evidence and that Holdcroft's convictions were not against the manifest weight of the evidence.

**{¶19}** In his second assignment of error, Holdcroft argues that *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711 (2009) abrogated *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856; and therefore, the trial court was required to make factual findings before imposing consecutive sentences. This Court has rejected this argument before, and we reject it again. *State v. Taylor*, 3d Dist. No. 9-10-44, 2011-Ohio-1866, ¶ 90. We also reject Holdcroft's argument that the trial court's application of *Foster* operated as an *ex post facto* law in violation of the Due Process Clause. *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, paragraph one of the syllabus.

**{¶20}** In his third assignment of error, Holdcroft first argues that the trial court erred in taking judicial notice of the same factual findings it had made at the original sentencing hearing (pre-*Foster*) for the resentencing hearing (post-*Foster*). We disagree. *Foster* simply stated that the trial courts were no longer *required* to make factual findings; *Foster* did not forbid trial courts from considering the relevant factors when sentencing. *State v. Smith*, 11th Dist. No. 2006-A-0082, 2007-Ohio-4772, ¶ 24. We also reject Holdcroft's argument that his sentence was not consistent with other sentences for similar arson convictions. Finally, we reject his argument relative to the trial court's restitution figure since Holdcroft did not object to the same at the resentencing hearing. We cannot

conclude that the trial court's restitution order amounted to plain error when the record supported its order herein.

{¶21} In his fourth assignment of error, Holdcroft argues that the trial court erred by imposing sentences upon both his aggravated arson and arson convictions since they constituted allied offenses of similar import. We disagree. The evidence presented demonstrated that Holdcroft set two separate fires (one upon the vehicle and one upon the porch); and therefore, separate animus exists for each separate conviction. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 49.

{¶22} In his fifth assignment of error, Holdcroft argues that the unreasonable delay between his conviction in 1999 and his final sentence in 2010 violated Crim.R. 32 and the 5th, 6th, and 14th Amendments to the U.S. Constitution. We reject this argument as well. The trial court here did not simply refuse to sentence Holdcroft; rather, it was subsequently determined upon appeal (almost ten years later) that Holdcroft's sentencing entry was non-final. Holdcroft was also resentenced to correct a PRC notification issue. Consequently, we must reject his arguments of unreasonable delay. *See e.g. State v. Spears*, 9th Dist. No. 24953, 2010-Ohio-1965.

{¶23} In his sixth assignment of error, Holdcroft argues that the trial court erred when it failed to change the venue or grant a mistrial due to jury misconduct. Since the record fails to indicate that any of the jurors who read the pretrial

newspaper article were actually biased in this case, Holdcroft's arguments lack merit. *State v. Wegmann*, 3d Dist. No. 1-06-98, 2008-Ohio-622, ¶ 34-35.

**{¶24}** In his seventh assignment of error, Holdcroft argues that the trial court erred by admitting other acts evidence in violation of Evid.R. 403 and 404, and thereby, depriving him of a fair trial. We disagree. The evidence of Holdcroft's previous threat to his wife, Kathy Hurst, that he would burn her house down if she ever left, and Holdcroft's solicitation of Joshua Shula to burn his wife's car and trailer were admissible to show Holdcroft's motive, intent, plan, and identity under Evid.R. 404(B) and R.C. 2945.59. Furthermore, the trial court's admission of this evidence would be harmless error *at most* in light of the other evidence presented.

**{¶25}** In his ninth assignment of error, Holdcroft argues that trial counsel was ineffective for various reasons. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St. 3d 136, 142 (1989), citing *Strickland* at 691. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142; *Strickland* at 694. *Even if* we *assume* that trial counsel was ineffective as Holdcroft argues, he has failed to demonstrate prejudice.

{¶26} Holdcroft's eighth, second, third, fourth, fifth, sixth, seventh, and ninth assignments of error are, therefore, overruled.

**FIRST ASSIGNMENT OF ERROR**

**THE COURT LACKED JURISDICTION TO IMPOSE MANDATORY POST-RELEASE CONTROL UPON THE APPELLANT.**

{¶27} In his first assignment of error, Holdcroft asserts that the trial court lacked jurisdiction to impose the mandatory, five-year term of PRC for his aggravated arson conviction (Count One) because, by the time of the resentencing hearing, he had already completed his ten-year-sentence on that conviction and was serving the remainder of his five-year-sentence for his arson conviction (Count Two). In response, the State contends that, at the time of the resentencing hearing, Holdcroft was still serving his aggregate fifteen-year sentence in the case; and therefore, the trial court has jurisdiction to impose PRC on both convictions.

{¶28} The relevant procedural history in this case is undisputed. On September 13, 1999, the trial court ordered that Holdcroft serve ten years on Count One, aggravated arson, and five years on Count Three, arson. The trial court further ordered that the term of imprisonment for Count Three be served

consecutively to the term for Count One, for an aggregate term of fifteen years. The trial court resentenced Holdcroft to impose the proper terms of PRC in January of 2010,[2] imposing five years of mandatory PRC for Count One and up to three years of discretionary PRC for Count Three. Thus, over ten years but less than fifteen years transpired between the time of the sentencing and the resentencing hearings.

{¶29} "'When sentencing a felony offender to a term of imprisonment, a trial court is required to notify the offender at the sentencing hearing about postrelease control and is further required to incorporate that notice into its journal entry imposing sentence.'" *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, ¶ 15, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, paragraph one of the syllabus. A trial court's failure to incorporate the proper notice of post-release control—whether PRC is mandatory or discretionary, the duration of PRC, and the possible consequences for violating PRC—renders the trial court's sentencing entry *partially* void. *Fischer*, 2010-Ohio-6238, at ¶ 27-29. Generally speaking, the appropriate remedy to correct the trial court's partially void sentencing entry is to resentence the offender. *Jordan*, 2004-Ohio-6085, at ¶ 23;

---

[2] The resentencing hearing was held on January 26, 2010, but the resentencing entry was not filed until February 2, 2010.

*State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, ¶ 16-17.[3]    However, an offender that "has already served the prison term ordered by the trial court * * * cannot be subject to resentencing in order to correct the trial court's failure to impose postrelease control." *Bezak*, 2007-Ohio-3250, at ¶ 18. *See also Hernandez*, 2006-Ohio-126, at ¶ 32 ("In that his journalized sentence has expired, Hernandez is entitled to the writ and release from prison and from further postrelease control."); *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, ¶ 28 ("Because Cruzado's sentence had not yet been completed when he was resentenced, Judge Zaleski was authorized to correct the invalid sentence to include the appropriate, mandatory postrelease-control term."); *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, syllabus ("In cases in which a defendant is convicted of, or pleads guilty to, an offense for which postrelease control is required but not properly included in the sentence, the sentence is void, and the state is entitled to a new sentencing hearing to have postrelease control imposed on the defendant unless the defendant has completed his sentence."); *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, ¶ 70 ("[O]nce an offender has

---

[3] The nature of the resentencing hearing depends upon when the partially void sentence was entered. For sentences entered on or after July 11, 2006, R.C. 2929.191 prescribes the resentencing hearing and remedial mechanism to correct such sentencing entries. *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, paragraph two of the syllabus. For sentences entered prior to July 11, 2006, the proper remedy is a resentencing hearing "limited to [the] proper imposition of postrelease control." *Fischer*, 2010-Ohio-6238, at ¶ 29. Although the majority in *Fischer* did not explicitly state that this limited resentencing hearing is an R.C. 2929.191 hearing, it appears that an R.C. 2929.191 hearing would meet the majority's requirements. *See Fischer*, 2010-Ohio-6238, at ¶ 43, Fn. 3 (Lanzinger, J., dissenting) (noting that the majority's opinion effectively overruled paragraph one of the syllabus in *Singleton*, 2009-Ohio-6434, requiring a de novo resentencing hearing).

completed the prison term imposed in his original sentence, he cannot be subjected to another sentencing to correct the trial court's flawed imposition of postrelease control.").

{¶30} The issue sub judice is whether the trial court was without jurisdiction to impose five years of mandatory PRC on Holdcroft's aggravated arson conviction (Count One) at the resentencing hearing because Holdcroft had already served "the prison term ordered by the trial court." Specifically, the issue concerns whether the words "prison term" and "sentence" used by the Ohio Supreme Court in *Bezak*, *Hernandez*, *Cruzado*, *Simpkins*, and *Bloomer* mean the prison term the trial court ordered for each conviction (Count) or whether these words refer to the entire term of imprisonment for all convictions (Counts) in the case, i.e. the aggregate sentence imposed for the entire case. If the words have the former meaning, the trial court was without jurisdiction to impose five years of mandatory PRC on Holdcroft's aggravated arson conviction (Count One) since Holdcroft had already served his ten-year sentence on that conviction (Count). If the words have the latter meaning, the trial court had jurisdiction to impose the five years of mandatory PRC on Holdcroft's aggravated arson conviction (Count One) since Holdcroft was still incarcerated on his total aggregate sentence at the time of the resentencing hearing. For the reasons that follow, we conclude that the words "prison term" and "sentence" as used by the Ohio Supreme Court in

-17-

*Hernandez* and the cases that follow it mean the entire journalized sentence for all convictions (Counts) in the case, i.e. the aggregate sentence; and therefore, the trial court sub judice had jurisdiction to impose the mandatory five-year term of PRC on Holdcroft's aggravated arson conviction (Count One).

{¶31} The answer to our inquiry is not directly revealed by the Ohio Supreme Court's decisions in *Hernandez*, *Bezak*, or *Bloomer* because the defendants in those cases were serving terms of imprisonment stemming from single-count indictments. 2006-Ohio-126, at ¶ 4; 2007-Ohio-3250, at ¶ 1; 2009-Ohio-2462, at ¶ 22. Comparison to the Court's decision in *Cruzado* is also inapposite since the offender was sentenced on two counts from two separate indictments; the trial court ordered that the sentences be served concurrently; and, the offender was resentenced prior to the expiration of the concurrent terms of imprisonment. 2006-Ohio-5795, at ¶ 2, 8-9. Similarly, the offender in *Simpkins* was sentenced to three concurrent terms of imprisonment stemming from a single indictment, and the offender was resentenced prior to the expiration of the concurrent terms of imprisonment. 2008-Ohio-1197, at ¶ 1-3.

{¶32} While the aforementioned cases do not directly answer the specific question presented here, they do provide the policy lens through which similar cases ought to be viewed. The Court in *Hernandez* explained that notifying an offender of his post-release control obligations after he has already served the term

of imprisonment "would circumvent the objective behind R.C. 2929.14(F) and 2967.28 to notify defendants of the imposition of postrelease control at the time of their sentencing." 2006-Ohio-126, at ¶ 28. Significant to the Court's decision in *Hernandez* was the fact that the offender had already been released from his original term of imprisonment and had unknowingly violated his PRC. *Id.* at ¶ 5-6. *See also Simpkins*, 2008-Ohio-1197, at ¶ 17. When the prison warden argued that the trial court's failure to properly notify the offender of PRC could be corrected by simply holding a resentencing hearing, the Court rejected that argument— comparing an after-the-fact PRC notification to an after-the-fact community control notification. *Hernandez*, 2006-Ohio-126, at ¶ 31, citing *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746; *Simpkins*, 2008-Ohio-1197, at ¶ 17. The Court in *Hernandez* observed that the purpose of R.C. 2929.19(B)(5), which requires that the trial court provide offenders sentenced to community control with notice of the possible consequences for violating their community control, is to provide offenders with the notice *before a violation* of their community control. 2006-Ohio-126, at ¶ 31, citing *Brooks*, 2004-Ohio-4746, at ¶ 33. Similarly, the purpose of R.C. 2929.19(B)(2)(c)-(e), formerly R.C. 2929.19(B)(3)(c)-(e), is to provide the offender with notice of the possible consequences if he violates the terms of post-release control *before a violation* of his post-release control has actually occurred. Interpreting the terms "prison term" and "sentence" used in the

aforementioned cases as the aggregate sentence on all convictions (Counts) in the case is consistent with the purpose behind R.C. 2929.19(B)(2)(c)-(e), because the offender would be notified about his PRC before his release from prison and, consequently, before a violation of PRC could ever occur.

{¶33} Interpreting "prison term" and "sentence" used in the aforementioned cases as the aggregate sentence on all convictions in the case is also consistent with Ohio Revised Code Chapter 2929. For purposes of Chapter 2929, "prison term" includes "[a] stated prison term," and the "stated prison term" includes the "combination of all prison terms and mandatory prison terms imposed by the sentencing court." R.C. 2929.01(BB), (FF). Similarly, the term "sentence" includes the "*combination of sanctions* imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense." R.C. 2929.01(EE) (emphasis added). Possible "sanction[s]" include terms of imprisonment imposed under 2929.14. R.C. 2929.01(DD). Moreover, R.C. 2929.14(C)(6) provides that "[w]hen consecutive prison terms are imposed pursuant to * * * [R.C. 2929.14], the term to be served is the aggregate of all of the terms so imposed." *See also* Ohio Adm. Code § 5120-2-03.1 ("When consecutive stated prison terms are imposed, the term to be served is the aggregate of all of the stated prison terms so imposed."). Consequently, throughout Chapter 2929, the words "prison term" and

"sentence" can refer to multiple terms of imprisonment (sanctions under R.C. 2929.14) imposed by the sentencing court, i.e. the aggregate sentence.

**{¶34}** Interpreting the words "prison term" and "sentence" used in the aforementioned cases as the aggregate sentence imposed on all convictions (Counts) in the case is also consistent with R.C. 2929.191. In response to *Jordan* and *Hernandez*, the General Assembly enacted H.B. 137, which provided, in relevant part:

> **(A)(1) If, prior to the effective date of this section, a court imposed a *sentence* including a *prison term* of a type described in division (B)(3)(c) of section 2929.19 of the Revised Code and failed to notify the offender pursuant to that division that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include a statement to that effect in the judgment of conviction entered on the journal or in the sentence pursuant to division (F)(1) of section 2929.14 of the Revised Code, *at any time before the offender is released from imprisonment under that term* * * ***
>
> **(2) If a court prepares and issues a correction to a judgment of conviction as described in division (A)(1) of this section *before the offender is released from imprisonment under the prison term the court imposed prior to the effective date of this section*, the court shall place upon the journal of the court an entry nunc pro tunc to record the correction to the judgment of conviction and shall provide a copy of the entry to the offender or, if the offender is not physically present at the hearing, shall send a copy of the entry to the department of rehabilitation and correction for delivery to the offender. * * ***

R.C. 2929.191(A)(1), (2) (emphasis added) (eff. 7-11-06).[4] As we alluded to above, the words "prison term" and "sentence" in R.C. 2929.191 have been expressly defined in R.C. 2929.01 to include the combination of prison terms, i.e. the aggregate sentence, imposed upon an offender by the sentencing court.

{¶35} Moreover, R.C. 2929.191's language must be interpreted in light of the history in which it was enacted, the General Assembly's response to *Jordan* and *Hernandez*, and in light of its remedial purpose. *Singleton*, 2009-Ohio-6434, at ¶ 48 (Pfeifer, J., dissenting) (R.C. 2929.191 was enacted in response to *Jordan* and *Hernandez*); *Id.* at ¶ 65 (Lanzinger and Stratton, J.J., concurring in part, dissenting in part) (same); *Id.* at ¶ 23 (describing R.C. 2929.191 as remedial); (H.B. 137 Final Bill Analysis) ("amendments made in the act concerning post-release control are non-substantive and merely clarify the prior law and thus are remedial in nature"). Remedial laws are to be liberally construed to give effect to their legislative purpose and to promote justice. R.C. 1.11. *See also Clark v. Scarpelli*, 91 Ohio St.3d 271, 275 (2001), citing *Curran v. State Auto. Mut. Ins. Co.*, 25 Ohio St.2d 33, 38 (1971). The General Assembly's purpose in enacting R.C. 2929.191 was, in part, "to reaffirm that, prior to [the statute's] effective date, an offender subject to post-release control sanctions was always subject to the post-release control sanctions after the offender's release from imprisonment

---

[4] R.C. 2929.191 was recently amended by H.B. 86 (eff. 9-30-11) to reflect changes in the sentencing statutes, however, the changes to R.C. 2929.191 were not substantive and do not affect the analysis herein.

without the need for any prior notification or warning * * *." (H.B. 137 Final Bill Analysis). The General Assembly also declared that it intended R.C. 2929.191 to apply "regardless of whether [the offenders] were sentenced prior to, or are sentenced on or after, the act's effective date * * *." (*Id*.). *See also Singleton*, 2009-Ohio-6434, at ¶ 65 (Lanzinger and Stratton, J.J., concurring in part, dissenting in part). In light of the foregoing, we conclude that interpreting the words "prison term" and "sentence" as the aggregate sentence for all convictions (Counts) in the case better effectuates the legislative purpose of R.C. 2929.191 by ensuring that offenders are serving post-release control upon their release from prison as required under R.C. 2967.28(B).

{¶36} The Court of Appeals, for its part, has taken different positions on this precise issue. The Eighth District has held that it is the expiration of the sentence on the specific conviction (Count) for which post-release control is applicable, and not the offender's ultimate release from prison, that determines whether a court may correct a sentencing error and impose post-release control at resentencing. *State v. Dresser*, 8th Dist. No. 92105, 2009-Ohio-2888, ¶ 11, reversed on other grounds in *State ex rel. Carnail v. McCormick,* 126 Ohio St.3d 124, 2010-Ohio-2671. The defendant in *Dresser* pled guilty to two counts of rape and two counts of pandering sexually-oriented material involving a minor in 2000. 2009-Ohio-2888, at ¶ 3. The trial court imposed an indefinite concurrent sentence

of ten years to life on the rape charges and a concurrent sentence of five years on the pandering charges. *Id*. The trial court further ordered that the concurrent rape sentence was to run consecutive to the five-year concurrent sentence for pandering; however, the trial court failed to impose post-release control on the pandering counts. *Id.* In July 2007, the trial court held a hearing and advised the defendant of his mandatory five-year term of PRC on the pandering convictions. *Id.* at ¶ 4. The defendant appealed and argued that he could not be given PRC on the pandering convictions since he had already served his five year concurrent terms on those convictions by the time of the hearing. *Id*. at ¶ 5. The Eighth District determined that, because the defendant had failed to file the original sentencing transcript, there was no evidence as to which order the offenses were to be served, and, in the absence of evidence to the contrary, the sentence for the rape charges was to be served first. *Id*., citing *State v. Dresser*, 8th Dist. No. 90305, 2008-Ohio-3541 (*Dresser* I). Nevertheless, the Eighth District concluded the trial court erred by failing to conduct a de novo hearing and remanded the matter for a new sentencing hearing. *Id*.

{¶37} On remand, the trial court conducted a de novo sentencing hearing and ordered the concurrent five-year sentence on the pandering charges be served *prior to* the indefinite rape sentences. *Id*. at ¶ 6. The trial court then concluded that post-release control could not be imposed on the pandering convictions,

because the defendant had already served the five-year sentence on those convictions. *Id.* Thereafter, the State appealed and argued that the trial court erred by failing to impose the mandatory term of PRC. *Id.* at ¶ 7. The Eighth District rejected the State's argument, however, and concluded that the trial court could not retroactively impose the mandatory PRC upon the defendant for his pandering convictions since he had already served the sentence for those convictions by the time of the resentencing hearing. *Id.* at ¶ 8.

{¶38} In reaching its decision in *Dresser*, the Eighth District stated that "other districts have also considered this issue and have concluded that it is the expiration of the prisoner's journalized sentence, rather than the offender's ultimate release from prison that is determinative of the trial court's authority to resentence." *Id.* at ¶ 11, citing *State v. Bristow*, 6th Dist. No. L-06-1230, 2007-Ohio-1864; *State v. Turner*, 10th Dist. No. 06AP-491, 2007-Ohio-2187; and *State v. Ferrell*, 1st Dist. No. C-070799, 2008-Ohio-5280. Although the Eighth District correctly stated the general proposition of law from those cases, the appellate court failed to apply the proposition of law correctly in *Dresser*. The facts of Dresser are easily distinguishable from the facts in *Bristow*, *Turner*, and *Ferrell*. All of the defendants in those cases, unlike Dresser, were sentenced to consecutive sentences for convictions in *separate cases* stemming from *separate indictments*. *Bristow*, 2007-Ohio-1863, at ¶ 2; *Turner*, 2007-Ohio-2187, at ¶ 4; *Ferrell*, 2008-Ohio-

-25-

5280, at ¶ 1. In fact, the defendants' convictions in *Turner* and *Ferrell* were from different counties. 2007-Ohio-2187, at ¶ 4; 2008-Ohio-5280, at ¶ 1. Consequently, the "journalized sentence" to which the Courts in *Bristow*, *Turner*, and *Ferrell* were referring to was the journalized sentence for an entire case—not the sentence for a single conviction (Count) in a single case. Therefore, the specific rule of law from *Bristow*, *Turner*, and *Ferrell* was that a trial court lacks jurisdiction to impose PRC upon an offender when the sentence for *the entire case* has been already served, even though the offender is still incarcerated on a different case and the sentence in the second case was ordered to be served consecutive to the first (now finished) case. This rule has been followed by several other districts besides the first, sixth,[5] and tenth, including this district. *State v. Arnold*, 189 Ohio App.3d 238, 2009-Ohio-3636 (2nd Dist.); *State v. Ables*, 3d Dist. No. 10-11-03, 2011-Ohio-5873; *State v. Henry*, 5th Dist. No. 2006-CA-00245, 2007-Ohio-5702; *State v. Rollins*, 5th Dist. No. 10CA74, 2011-Ohio-2652. Despite the obvious differences between the facts and procedural history in *Bristow*, *Turner*, *Ferrell*, and the facts and procedural history in *Dresser*, the Eighth District still follows *Dresser* and continues to examine sentences on

---

[5] The Sixth District does have one case not following this rule. *State v. Lathan*, 6th Dist. No. L-10-1359, 2011-Ohio-4136. This appears to be the only case that has held that consecutive sentences in separate cases constitute one aggregate sentence for purposes of resentencing for proper imposition of PRC. The Sixth District has other cases following the rule it previously set forth in *Bristow*, supra. *State v. Larkins*, 6th Dist. No. H-10-010, 2011-Ohio-2573; *State v. Helms*, 6th Dist. No. L-10-1079, 2010-Ohio-6520.

specific convictions (Counts) for purposes of determining whether a trial court has jurisdiction to impose PRC at a resentencing hearing. *State v. Cobb*, 8th Dist. No. 93404, 2010-Ohio-5118; *State v. O'Hara*, 8th Dist. No. 95575, 2011-Ohio-3060.

{¶39} The Ninth District, on the other hand, has concluded that, for purposes of determining whether a trial court has jurisdiction to resentence an offender to properly impose PRC under *Hernandez* and its progeny, a "journalized sentence that includes consecutive sentences does not expire until the aggregate time of the consecutive sentences expires." *State v. Deskins*, 9th Dist. No. 10CA009875, 2011-Ohio-2605, ¶ 19. The defendant in that case pled guilty to five counts of rape, and, in September 2003, the trial court sentenced him to serve five years imprisonment on each count and further order that the terms be served consecutively for an aggregate term of twenty-five years. *Id*. at ¶ 2-3.[6] In April 2010, the trial court held a resentencing hearing and resentenced the defendant to the same twenty-five-year aggregate prison term, but this time properly imposed the mandatory five-year term of PRC. *Id*. at ¶ 4. Like Holdcroft herein, the defendant in *Deskins* argued that the trial court lacked jurisdiction to impose PRC on at least one of his convictions since he had already served seven years by the

---

[6] It is not clear from the appellate court's decision whether or not the trial court specified the order in which the defendant was to serve the consecutive prison terms, i.e. count one first, count two second, etc. *Deskins*, 2011-Ohio-2605, at ¶ 2-3.

time of the resentencing hearing, but the Ninth District rejected this argument and found that the defendant's journalized sentence had not expired. *Id*. at ¶ 19.

**{¶40}** To reach its decision, the Ninth District relied upon the Fifth District's decision in *State v. Tharp*, 5th Dist. No. 07-CA-9, 2008-Ohio-3995. The defendant in *Tharp* pled no contest and was found guilty of two counts of burglary, second degree felonies; one count of theft of a motor vehicle, a fourth degree felony; two counts of theft of a firearm, fourth degree felonies; one count of breaking and entering, a fifth degree felony; and two counts of theft in violation, fifth degree felonies. *Id*. at ¶ 2. On November 1, 2000, the trial court sentenced the defendant to two years on each of the two burglary convictions, one year on the theft of a motor vehicle conviction, one year on the breaking and entering conviction, six months on each of the two theft of a firearm convictions, and six months on each of the two theft convictions. *Id*. at ¶ 3. The trial court ordered that the terms of imprisonment be served consecutively for an aggregate eight years imprisonment, but the trial court did not specify which term of imprisonment was to be served first. *Id*. at ¶ 3, 11. On October 16, 2006, the trial court held a resentencing hearing to properly impose PRC. *Id*. at ¶ 4. On appeal, the defendant argued that the trial court lacked jurisdiction to impose PRC upon his burglary convictions (Counts One and Two) since the termination judgment entry listed the burglary convictions first, and he had already served the four years

-28-

for those convictions by the time of the resentencing hearing. *Id.* at ¶ 12. The Fifth District rejected the defendant's argument, reasoning as follows:

> **The charges for which Appellant was found guilty and sentenced to arise from a single indictment issued on February 24, 2000. The trial court's sentencing entry stated that each term was to be served consecutively, but the trial court generally stated as to each count that, "said period of incarceration to be served consecutive to the time herein imposed." The trial court did not specify that certain counts were to be served consecutively to another. Accordingly, we find Appellant's journalized sentence for an aggregate term of eight years does not expire until November 2008. The trial court did not lack jurisdiction to correct Appellant's invalid sentence to include post release control because Appellant's journalized sentence had not yet expired when he was resentenced.**

*Id.* at ¶ 14.

{¶41} While the trial court sub judice did specify that Holdcroft's ten-year aggravated arson sentence be served first, we do not think this fact, alone, sufficiently distinguishes our case from *Deskins* and *Tharp*, supra. Although the Fifth District did rely upon this fact, in part, when it reached its decision, it also specifically noted that the defendant's sentence arose from a single indictment. Id. Since its decision in *Tharp*, the Fifth District has distinguished *Turner*, *Ferrell*, and *Arnold*, at least in part, on the basis that the defendants in those cases were sentenced in separate cases. *State v. Booth*, 5th Dist. No. 2010CA00155, 2011-Ohio-2557, ¶ 12-13. The Fifth District has also more recently clarified the applicable rule to be gleaned from *Bristow*, *Turner*, *Ferrell*, and *Arnold* as

follows: "where an offender has completed his sentence on the case for which the court has resentenced him under R.C. 2929.191, the resentencing entry is void for lack of jurisdiction even if the offender remains incarcerated on another case at the time of the resentencing." *Id.*, at ¶ 12, citing *State v. Henry*, 5th Dist. No. 2006-CA-00245, 2007-Ohio-5702. *See also Rollins*, 2011-Ohio-2652, at ¶ 10 ("the language of R.C. 2929.191(A)(1) which permits resentencing "at any time before the offender is released from prison on that term" refers to the Richland County sentence. The sentence from Paulding County is a completely separate term of imprisonment, imposed by a different court under a separate indictment and case, and imposed roughly ten months after appellant began to serve his term of imprisonment from Richland County.").

**{¶42}** After reviewing the aforementioned cases, we agree with the Fifth District that the rule in *Bristow*, *Turner*, *Ferrell*, and *Arnold* applies where the offender has been sentenced in *separate cases* and the *separate cases* have been ordered to be served consecutively. We do not agree with the Eighth District's expansion of this rule to include convictions (Counts) in a single case arising from a single indictment like the case herein. Therefore, we hold that, for purposes of determining whether a trial court has jurisdiction to resentence a defendant to properly include PRC, a journalized sentence *for a single case* that includes consecutive sentences on separate convictions (Counts) does not expire until the

-30-

aggregate time of the consecutive sentences for all the convictions (Counts) expires. *Deskins*, 2011-Ohio-2605, at ¶ 19.

{¶43} Our holding here is not only consistent with the Ohio Revised Code and the applicable case law but is also consistent with public policy. As we previously mentioned, our conclusion here is consistent with the policy of notifying the offender of his PRC *prior to* a possible violation of the same. Moreover, our conclusion here ensures that offenders are actually serving their PRC—PRC, which was determined to be appropriate as a matter of public policy as evidenced in R.C. 2967.28. This strong public policy of ensuring that offenders are serving post-release control was further expressed when the General Assembly promptly passed of H.B. 137 (enacting R.C. 2929.191) in response to the Ohio Supreme Court's decisions in *Jordan* and *Hernandez*. The Ohio Supreme Court has also recognized this same public policy in its post-release control cases. *See Simpkins*, 2010-Ohio-1197, at ¶ 26 ("Although res judicata is an important doctrine, it is not so vital that it can override 'society's interest in enforcing the law, and in meting out the punishment the legislature has deemed just.'") (quoting *State v. Beasley*, 14 Ohio St.3d 74, 75 (1984)); *Fischer*, 2010-Ohio-6238, at ¶ 21-23. Finally, our decision encourages multi-count indictments (a single case) rather than separate indictments (separate cases), which enhances judicial economy, diminishes inconvenience to witnesses, and minimizes the possibility of

incongruous results for the defendant. *See State v. Schaim*, 65 Ohio St.3d 51, 58 (1992) (joinder under Crim.R. 8(A)).

{¶44} Since Holdcroft had not yet completed his aggregate fifteen-year sentence before the resentencing hearing was held, the trial court had jurisdiction to sentence him to five years of mandatory PRC on his aggravated arson conviction (Count One).

{¶45} Holdcroft's first assignment of error is, therefore, overruled.

{¶46} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ROGERS, P.J. concurs.**

**/jlr**

**SHAW, P.J., Concurs in Part and Dissents in Part.**

{¶47} In its decision to overrule the first assignment of error, the majority acknowledges that the Supreme Court of Ohio has not resolved the issue presented of whether a trial court has the authority to impose postrelease control on a defendant who has already completed his or her prison term for a particular offense, but remains imprisoned on another offense arising from the same case. In proposing its resolution of this issue, the majority sets forth a statutory and case

analysis that the majority believes precludes the reviewing court from considering the specific sentence ordered by the trial court directed to each individual offense charged within an indictment. Instead the majority would require the reviewing court to base its decision only upon a "lump-sum," aggregate analysis which essentially forges the entire "indictment," or "indictments" and the aggregate "sentence" or "sentences" into a single, overall "prison term."

{¶48} According to the majority, the multiple or consecutive sentences contained within this single "prison term" are then always capable of later being parsed and interpreted in favor of the state, for purposes of interpreting prison time served and cleaning up PRC errors, (or perhaps even for interpreting double jeopardy implications), without regard to how many different individual offenses are involved, without regard to the specific terms of any individual sentencing orders contained within each judgment entry and without regard to how many of these individual sentences, according to the specific terms of the judgment entry, have in fact been completely served at the time any of these other issues are raised. As a consequence, the majority effectively rules in the case before us that where there are multiple sentences within a single case, the trial court does not have the authority to specify which individual sentence is to be served first, regardless of what it states in the judgment entry.

{¶49} Because I believe the majority's proposal to shift our analysis of these cases from the specific sentence imposed by the trial court pertaining to each individual offense in any given indictment, toward an analysis based only upon the overall aggregate sentence and aggregate prison term is problematic in general and unwarranted in this particular case, I respectfully dissent from the disposition of the first assignment of error. I concur in the disposition of the remaining assignments of error.

{¶50} My first concern is that the majority decision disregards the specific terms of the judgment entry of sentence in this case, which, as even the majority concedes, clearly indicates that the ten year prison term for count one would be served prior to the remaining prison terms, and hence the sentence for count one would have been completed at the time the PRC issue regarding count one arose. I see no sound reason for disregarding the specific language of a trial court's own judgment entry of sentence in interpreting matters pertaining to that sentence.

{¶51} Thus, even if the majority rationale were to be considered as a viable "default" alternative employed to determine the order of sentences in those cases where the sentencing entry is silent on the nature of the consecutive sentences, there is no reason to apply it in the present case where the trial court itself has given us all the information we need to decide the question. And as noted above, it seems to me that by disregarding the trial court's specific sentencing language in

this case, we are effectively ruling that trial courts in general do not have the authority to specify the order of consecutive sentences in a judgment entry of sentence; something that I question whether we have the authority to do.

{¶52} Second, and perhaps more importantly, beyond merely deviating from what I believe to be the sounder appellate approach of addressing each specific offense, conviction and sentence for each count in the indictment, I believe the position taken by the majority runs counter to fundamental sentencing principles in Ohio jurisprudence which *require* courts to separately analyze the *specific sentence imposed for each offense*. The Supreme Court of Ohio has stated the following with regard to the purpose underpinning Ohio felony-sentencing statutes.

> **Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time. Under R.C. 2929.14(A),** *the range of available penalties depends on the degree of each offense***. For instance, R.C. 2929.14(A)(1) provides that "[f]or a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years."[7] (Emphasis added.) R.C. 2929.14(A)(2) provides a different range for second-degree felonies. In a case in which a defendant is convicted of two first-degree felonies and one second-degree felony,** *the statute leaves the sentencing judge no option but to assign a particular sentence to each of the three offenses, separately***. The statute makes no provision for grouping offenses**

---

[7] We note that the legislature has since amended the felony-sentencing statutes to include new ranges of available penalties for some offenses. For example, R.C. 2929.14(A)(1) now provides, "[f]or a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years." However, the overriding offense-specific approach to the felony-sentencing scheme remains the same.

> *together and imposing a single, "lump" sentence for multiple felonies.*
>
> **Although imposition of concurrent sentences in Ohio may appear to involve a "lump" sentence approach, the opposite is actually true. Instead of considering multiple offenses as a whole and imposing one, overarching sentence to encompass the entirety of the offenses as in the federal sentencing regime,** *a judge sentencing a defendant pursuant to Ohio law must consider each offense individually and impose a separate sentence for each offense***. See R.C. 2929.11 through 2929.19. * * * Only after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively. * * *** *Under the Ohio sentencing statutes, the judge lacks the authority to consider the offenses as a group and to impose only an omnibus sentence for the group of offenses***.**

*State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶¶ 8-9. (Internal Citations

Omitted) (Emphasis added).

{¶53} In addition, the Supreme Court in *Saxon* specifically addressed the

term "sentence" as defined in R.C. 2929.01(E)(E), the former R.C. 2929.01(F)(F),

and reached a conclusion that appears to be inconsistent with majority's regarding

how the term "sentence" is applicable to Ohio's felony-sentencing scheme.

> **[Revised Code Section] 2929.01(FF) defines a sentence as "the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense."[8] [The State] in the case at bar points to the "combination of sanctions" language in this definition and urges us to find that that [sic] language necessarily indicates that a "sentence" includes all sanctions given for all offenses and is not**

---

[8] The term sentence is now codified under R.C. 2929.01(FF) which provides the same definition stated above.

-36-

> **limited to the sanction given for just one offense. But a trial court may impose a combination of sanctions on a single offense, for example, a fine and incarceration. See R.C. 2929.15 to 2929.18 * * *. Therefore, [the State's] insistence that the "combination of sanctions" language supports [it's] contentions is misplaced. This language merely recognizes the availability of multiple sanctions for a single offense.**
>
> **Further, the statute explicitly defines "*a* sentence" as those sanctions imposed for "*an* offense." The use of the articles "*a*" and "*an*" modifying "sentence" and "offense" denotes the singular and does not allow for the position urged by [the State]. A finding that the statute intended to package the sanctions for all sentences into one, appealable bundle would ignore the plain meaning of the statutory language: *a sentence is the sanction or combination of sanctions imposed on each separate offense*. If the legislature had intended to package sentencing together, it easily could have defined "sentence" as the sanction or combination of sanctions imposed for all offenses.**

*Saxon* at ¶¶ 12-13. (Emphasis in original).

**{¶54}** Notably, the Supreme Court also appears to apply this offense-specific approach to sentencing in the context of postrelease control. In *Bezak,* the Supreme Court expressly stated in its syllabus that "[w]hen a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included *in a sentence for a particular offense*, the sentence is void. The offender is entitled to a new sentencing hearing *for that particular offense*." *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, syllabus.

**{¶55}** It is also notable that the Supreme Court in *Fischer* limited its decision to only overrule a specific portion of *Bezak*. The Supreme Court made it

clear that it revisited "*only* one component of the holding in *Bezak*, and we overrule *only* that portion of the syllabus that requires a complete resentencing hearing rather than a hearing restricted to the void portion of the sentence." *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 36. Thus, the Supreme Court left intact its approach to analyze *a sentence for a particular offense* when reviewing whether a defendant is entitled to be resentenced for purposes of the trial court properly imposing postrelease control.

{¶56} In addition, the statutory scheme for imposing postrelease control in R.C. 2967.28 appears to mimic the felony-sentencing statute analyzed by the Supreme Court in *Saxon.* In particular, the terms "sentence" and "prison term" are used to refer to the individual sanction imposed by the trial court for *a particular offense*. Like the felony-sentencing scheme, the statute governing postrelease control assigns specific terms of postrelease control according to the degree of felony or category of offense—i.e., felony sex offense. For instance, R.C. 2967.28(B) provides that

> **Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. * * * Unless reduced by the parole board pursuant to division (D) of this section when authorized under**

**that division, a period of post-release control required by this division for an offender shall be of one of the following periods:**

**(1)   For a felony of the first degree or for a felony sex offense, five years;**

**(2)   For a felony of the second degree that is not a felony sex offense, three years;**

**(3)   For a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened physical harm to a person, three years.**

**(C) Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender \* \* \*.**

{¶57} Nowhere in R.C. 2967.28 does the legislature direct a court to treat a "sentence" or a "prison term" as the aggregate sentence arising from the case for purposes of imposing postrelease control.  In fact, the statute makes no provisions for grouping offenses together and *imposing* a single aggregate term of postrelease control for multiple felonies, despite the fact that one or more periods of postrelease control are to be *served* concurrently.  *See* R.C. 2967.28(F)(4)(c).[9]  Rather, the legislature in R.C. 2967.28 chose to consistently use the terms

---

[9] Revised Code Section R.C. 2967.28(F)(4)(c) states, "[i]f an offender is subject to more than one period of post-release control, the period of post-release control for all of the sentences shall be the period of post-release control that expires last, as determined by the parole board or court. Periods of post-release control shall be served concurrently and shall not be imposed consecutively to each other."

"sentence" and "prison term" to refer to *a sentence for a particular offense* for purposes of imposing postrelease control.

{¶58} Finally, as noted earlier, I find it significant in this case that the trial court specifically ordered Holdcroft to serve the ten-year sentence for the aggravated arson conviction first, with the five-year sentence for the arson conviction to be served consecutive to the aggravated arson sentence. The Eighth District in *State v. Dresser* also found this fact persuasive in resolving the precise issue before us. *See State v. Dresser*, 8th Dist. No. 92105, 2009-Ohio-2888, ¶ 11, reversed on other grounds in *State ex re. Carnail v. McCormick*, 126 Ohio St.3d 124-2010-Ohio-2671. The court in *Dresser* found dispositive the fact that the trial court had ordered the defendant to serve his five-year sentence for pandering *prior* to his indefinite ten-year to life sentence for rape. *Id*. The court relied on *Bezak* and concluded the following:

> **Once an offender has served the prison term ordered by the trial court, he or she cannot be subject to resentencing in order to correct the trial court's failure to impose postrelease control at the original hearing.** *State v. Bezak***, 114 Ohio St.3d 420, 2008-Ohio-3250.** **Here, Dresser had completed his [five-year pandering] sentence; consequently, the trial court could not impose postrelease control, after the fact, on the pandering charges.**

*Dresser* at ¶ 8.

{¶59} The majority cites decisions from two other appellate districts in support of its position that the "aggregate sentence," and not the sentence imposed for a particular offense, is to be considered when a defendant is resentenced to properly impose postrelease control. *Supra* at ¶¶ 39-42. However, as noted by the majority, the trial courts in both of those cases did not specify the order in which the consecutive sentences were to be served.

{¶60} For all of these reasons, I would sustain the first assignment of error and find that the trial court was without the authority to impose the mandatory five-year term of postrelease control required for the aggravated arson conviction due to the fact that Holdcroft had already served his sentence for that offense.

**/jlr**